IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 22-00142 |
| v. | : | DATE FILED: January 25, 2023 |
| | : | VIOLATIONS: |
| LAYE SEKOU CAMARA | | 18 U.S.C. § 1546(a) (use of a |
| a/k/a "K-1," | : | fraudulently obtained immigration |
| a/k/a "Dragon Master" | | document - 3 counts) |
| | : | 18 U.S.C. § 1546(a) (possession of a |
| | | fraudulently obtained immigration |
| | : | document - 1 count) |

SUPERSEDING INDICTMENT

COUNT ONE

THE GRAND JURY CHARGES THAT:

HISTORICAL BACKGROUND

1.     In 1822, freed American slaves settled on the western coast of Africa in

the area that now encompasses Liberia, which became an independent republic in 1847. Liberia's

political and economic systems were dominated by the descendants of the settlers, known as

"Americo-Liberians," despite the fact that Americo-Liberians comprised only five percent of

Liberia's population. Liberia was never colonized by a foreign power; however, the Americo-

Liberian settlers administrated a colonial style system of government that denied full civic rights

to some of the indigenous tribal groups and relied on coercive force to maintain power. The

historical marginalization of indigenous tribal groups and the violence inflicted on native

Liberians created a deeply divided society that set the stage for Liberia's two civil wars that

erupted in the latter decades of the twentieth century.

2.        On April 12, 1980, a small group of soldiers from Liberia's national army, the Armed Forces of Liberia (AFL), seized power in a violent coup, killing President William Tolbert and other Americo-Liberian government officials. The group was led by Master Sergeant Samuel K. Doe. Doe, a member of the Krahn tribe, was Liberia's *de facto* ruler until November 1985, when he was elected President of Liberia in a widely discredited election. Still, Doe's government was recognized by the international community, including the United States.

3.        Doe was an authoritarian ruler, first as Liberia's *de facto* leader and later as Liberia's elected President. He banned political activities and used the military to suppress dissent. He cultivated patronage systems that benefitted his fellow Krahn tribesmen and elevated members of the Mandingo tribe, previously considered outsiders in Liberia, to favored economic and political status. At the same time, Doe sidelined former allies, in particular members of the Gio and Mano tribes who helped bring him to power, largely excluding them from political society.

4.        The Doe administration's corruption, repressive rule, and favoritism fueled resentment among many in Liberia. Consequently, in the late 1980s, Charles Taylor, Jucontee Thomas Woewiyu, and others, as a core group, formed the National Patriotic Front of Liberia (NPFL). On December 24, 1989, NPFL forces, led by Taylor, attacked Liberia through the Ivory Coast and initiated an offensive aimed at overthrowing Doe. This was the beginning of Liberia's First Civil War.

5.        The NPFL was met with fierce resistance from the AFL, along with fighters from the United Liberation Movement for Democracy in Liberia (ULIMO). ULIMO was largely comprised of Krahn and Mandingo tribesmen. In March 1994, ULIMO split into two

wings, the Krahn-dominated ULIMO-J and the Mandingo-dominated ULIMO-K. The two wings of ULIMO waged war against one another, as well as on the NPFL.

6.     Liberia's First Civil War was characterized by brutality, war crimes, and atrocities on all sides. The summary execution and torturing of civilians, sexual enslavement and rape, and the use of child soldiers were the norm among the warring rebel groups. Much of this conduct was based on ethnic divisions. In 1997, after approximately two years of interim governments, Charles Taylor was elected president of Liberia, in what was overwhelmingly accepted as a free and fair election.

7.     Taylor's government was a kleptocracy buttressed by state-sponsored violence. Taylor's Anti-Terrorist Unit and the Special Operations Division of the Liberian National Police were notorious for visiting atrocities upon Liberian citizens who opposed Taylor. Like Doe's before him, Taylor's government fueled resentment among many in Liberia.

8.     Consequently, in 1999, Liberia's Second Civil War began. Two rebel groups -- Liberians United for Reconciliation and Democracy (LURD), the Mandingo-dominated successor to ULIMO-K, and the Movement for Democracy in Liberia (MODEL), the Krahn-dominated successor to ULIMO-J -- waged war against Taylor's government. LURD's stated objective was to remove Taylor from the presidency of Liberia. Liberia's Second Civil War, much like its first, was characterized by brutality, war crimes, and atrocities, many of which were perpetrated by LURD rebels. Furthermore, in waging its war against Taylor's government, LURD, as other rebel groups had done throughout Liberia's civil wars, recruited and used child soldiers.

9.    With the arrival of peacekeepers from the Economic Community of West African States, and facilitation by the government of the United States, on August 11, 2003, Taylor resigned as president of Liberia and went into exile in Nigeria.

10.    During Liberia's Second Civil War, defendant LAYE SEKOU CAMARA, a member of the Mandingo tribe, was a LURD General who was also known as "K-1" and "Dragon Master."

### DEFENDANT LAYE SEKOU CAMARA'S APPLICATIONS FOR VISAS AND IMMIGRATION BENEFITS

11.    A Department of State Form DS-160 (Non-Immigrant Visa Application) is an application for an immigration benefit, that is, for a temporary non-immigrant United States visa. Approval of the application, and the issuance of the United States visa to the non-immigrant applicant, is a prerequisite for entry into the United States for non-immigrants from certain countries. The Form DS-160 (DS-160) requires the non-immigrant applicant to provide biographical information and answer a series of security, background, and other questions.

12.    On or about June 15, 2011, defendant LAYE SEKOU CAMARA, a/k/a "K-1," a/k/a "Dragon Master," submitted a DS-160 online to the United States Department of State (State Department). Defendant CAMARA's photograph was affixed to his application, and he provided, among other things, biographical information. Additionally, CAMARA submitted the following false and fraudulent answers, among others, to questions posed in his DS-160 application:

a.    Under the "Additional Work/Education/Training" section of his DS-160, CAMARA, responded "No" to the question: "Do you belong to a clan or tribe?"

b.    Under the "Additional Work/Education/Training" section of his DS-160, CAMARA, responded "No" to the question: "Have you ever served in, been a member

4

of, or been involved with a paramilitary unit, vigilante unit, rebel group, guerrilla group, or insurgent organization?"

c.      Under the "Security" section of his DS-160, CAMARA, responded "No" to the question: "Have you committed, ordered, incited, assisted, or otherwise participated in extrajudicial killings, political killings, or other acts of violence?"

13.      On or about June 24, 2011, defendant LAYE SEKOU CAMARA, received an immigration benefit from United States immigration authorities; that is, his DS-160 application for a visa was approved and, consequently, he received a temporary non-immigrant visa which authorized his entry into the United States. Pursuant to this visa, on or about June 30, 2011, defendant CAMARA entered the United States. In or about early August 2011, CAMARA left the United States.

14.      A Department of State Form DS-230 (Application for Immigrant Visa and Alien Registration) is an application for an immigration benefit, that is, for a United States immigrant visa. Approval of the application, and issuance of a United States visa to the immigrant applicant, entitles the applicant to permanently reside in the United States, and upon entering and being admitted to the United States, receive an alien registration receipt card (Green Card) evidencing the immigrant's right permanently to reside in the United States.

15.      Application for an immigrant visa is a multi-step process. At least two of these steps relate directly to the Form DS-230 (DS-230). First, the applicant seeking an immigrant visa submits the DS-230 to the State Department. The DS-230 requires the applicant to answer a series of background questions. At the end of the DS-230, the applicant swears or affirms that, among other things, the information that he provided in his DS-230 is true and correct. Second, the applicant has an in-person interview with a State Department official. This

interview is conducted under oath and, based upon the information provided in the DS-230 and during the interview, the State Department official determines whether the applicant's DS-230 application should be granted.

16.    On or about June 14, 2012, the State Department reviewed a DS-230 submitted by defendant LAYE SEKOU CAMARA, and interviewed defendant CAMARA under oath. At the end of his DS-230, CAMARA acknowledged by his signature that if he provided any statement in his DS-230 that was "willfully false or misleading… [he] may subject to criminal prosecution…." CAMARA also solemnly swore or affirmed that all the statements "which appear in [his DS-230] … are true and complete to the best of [his] knowledge and belief." After being advised in Question 40 of Part II of his DS-230 that "United States laws governing the issuance of visas require each applicant to state whether or not he or she is a member of any class of individuals excluded from admission into the United States. The excludable classes are described below in general terms. You should read carefully the following list and answer **Yes** or **No** to each category. The answers you give will assist the consular officer to reach a decision on your eligibility to receive a visa," CAMARA submitted the following false and fraudulent answers, among others, to questions posed in his DS-230 application:

a.    CAMARA, by checking the box corresponding to the answer "No" to Question 40f of Part II of his DS-230, asserted he was not: "An alien…who seeks or has sought a visa, entry into the United States, or any immigration benefit by fraud or misrepresentation…."

b.    CAMARA, by checking the box corresponding to the answer "No" to Question 40l of Part II of his DS-230, asserted he was not: "An alien…who [had] ever engaged in the recruitment of or the use of child soldiers."

17.     On or about September 14, 2012, defendant LAYE SEKOU CAMARA received an immigration benefit from United States immigration authorities; that is, his DS-230 application for an immigrant visa was approved, and consequently, he received an immigrant visa which authorized his permanent residence in the United States, and upon entering and being admitted to the United States, also entitled him to receive a Green Card, which he did receive, evidencing his authorized permanent residence in the United States. Pursuant to this visa, on or about November 22, 2012, defendant CAMARA entered the United States.

## DEFENDANT LAYE SEKOU CAMARA'S POSSESSION AND USE OF A FRAUDULENTLY-OBTAINED GREEN CARD

18.     Pennsylvania Department of Transportation (PennDOT) Form DL-54A (Application for Initial Identification Card) is an application that must be submitted to obtain a Pennsylvania state photo identification card. For a non-United States citizen to obtain a Pennsylvania state identification card, the individual must provide supporting documentation to PennDOT that includes immigration documents indicating current lawful immigration status.

19.     On June 21, 2017, defendant LAYE SEKOU CAMARA submitted a Form DL-54A in person at PennDOT's Island Avenue, Philadelphia facility, to obtain a Pennsylvania state identification card. As supporting documentation to prove his lawful immigration status, that is, his lawful entry into and lawful authorized stay in the United States, defendant CAMARA provided to PennDOT the Green Card issued to him as a result of the approval of his DS-230.

20.     The New Jersey Board of Nursing (Board) has an online licensure application process requiring a non-United States citizen seeking to practice as a Certified Homemaker-Home Health Aide in New Jersey to submit supporting documentation to the Board that includes immigration documents indicating current lawful immigration status.

21.     On or about January 14, 2020, defendant LAYE SEKOU CAMARA submitted an application to the Board for a license to practice as a Certified Homemaker-Home Health Aide in New Jersey. As supporting documentation to prove his lawful immigration status, that is, his lawful entry into and lawful authorized stay in the United States, defendant CAMARA provided to the Board the Green Card issued to him as a result of the approval of his DS-230.

22.     Visiting Angels provides living assistance services to, among others, the aged and infirm. It has offices in Marmora, New Jersey. Its employees include home health aides. When a home health aide who is employed by Visiting Angels is a non-United States citizen, Visiting Angels is required to execute a USCIS Form I-9 verifying the noncitizen's eligibility for employment. One way Visiting Angels verifies a non-United States citizen's eligibility for employment is through receipt from the non-United States citizen of his Green Card.

23.     On or about February 25, 2020, defendant LAYE SEKOU CAMARA, in order to prove his lawful immigration status and assist Visiting Angels in executing a USCIS Form I-9 verifying CAMARA's eligibility for employment, provided his Green Card to Visiting Angels, which Green Card was issued to him as a result of the approval of his DS-230.

24.     On or about March 26, 2022, at John F. Kennedy International Airport in New York, defendant LAYE SEKOU CAMARA possessed a Green Card evidencing his lawful permanent residency in the United States, which Green Card was issued to him as a result of the approval of his DS-230.

25.     On or about June 21, 2017, in the Eastern District of Pennsylvania, defendant

**LAYE SEKOU CAMARA,**
**a/k/a "K-1,"**
**a/k/a "Dragon Master,"**

knowingly used a document prescribed by statute or regulation for entry into or evidence of authorized stay in the United States, knowing it to have been procured by false statement or to have otherwise been procured by fraud; that is, defendant CAMARA knowingly presented to PennDOT as evidence of lawful authorized stay in the United States, his Green Card, which card he received as a result of the approval of his DS-230, in which he made false statements with respect to a material facts, that is: (1) he falsely answered "No" to Question 40f of Part II of his DS-230, in which he denied being a member of a class of individuals excluded from entry into the United States by reason of seeking "or [having] sought a visa, entry into the United States, or any immigration benefit by fraud or misrepresentation," when as defendant knew, he had previously sought a visa and entry into the United States by false statement and fraud, in that he submitted a DS-160, in which he falsely answered "No" to various questions; and (2) he falsely answered "No" to Question 40l of Part II of his DS-230, in which he denied being a member of a class of individuals excluded from entry into the United States by reason of being "An alien…who [had] ever engaged in the recruitment of or the use of child soldiers," when as the defendant knew, he had engaged in the recruitment of or the use of child soldiers.

In violation of Title 18, United States Code, Section 1546(a).

## COUNT TWO

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1 through 17 and paragraphs 20 and 21 of Count One of this Superseding Indictment are incorporated here.

2.      On or about January 14, 2020, in the District of New Jersey, defendant

**LAYE SEKOU CAMARA,**
**a/k/a "K-1,"**
**a/k/a "Dragon Master,"**

knowingly used a document prescribed by statute or regulation for entry into or evidence of authorized stay in the United States, knowing it to have been procured by false statement or to have otherwise been procured by fraud; that is, defendant CAMARA knowingly presented to the New Jersey Board of Nursing as evidence of lawful authorized stay in the United States, his Green Card, which card he received as a result of the approval of his DS-230, in which he made false statements with respect to a material facts, that is: (1) he falsely answered "No" to Question 40f of Part II of his DS-230, in which he denied being a member of a class of individuals excluded from entry into the United States by reason of seeking "or [having] sought a visa, entry into the United States, or any immigration benefit by fraud or misrepresentation," when as defendant knew, he had previously sought a visa and entry into the United States by false statement and fraud, in that he submitted a DS-160, in which he falsely answered "No" to various questions; and (2) he falsely answered "No" to Question 40l of Part II of his DS-230, in which he denied being a member of a class of individuals excluded from entry into the United States by reason of being "An alien...who [had] ever engaged in the recruitment of or the use of child soldiers," when as the defendant knew, he had engaged in the recruitment of or the use of child soldiers.

In violation of Title 18, United States Code, Section 1546(a).

## COUNT THREE

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1 through 17 and paragraphs 22 and 23 of Count One of this Superseding Indictment are incorporated here.

2.      On or about February 25, 2020, in the District of New Jersey, defendant

**LAYE SEKOU CAMARA,**
**a/k/a "K-1,"**
**a/k/a "Dragon Master,"**

knowingly used a document prescribed by statute or regulation for entry into or evidence of authorized stay in the United States, knowing it to have been procured by false statement or to have otherwise been procured by fraud; that is, defendant CAMARA knowingly presented to Visiting Angels as evidence of lawful authorized stay in the United States, his Green Card, which card he received as a result of the approval of his DS-230, in which he made false statements with respect to a material facts, that is: (1) he falsely answered "No" to Question 40f of Part II of his DS-230, in which he denied being a member of a class of individuals excluded from entry into the United States by reason of seeking "or [having] sought a visa, entry into the United States, or any immigration benefit by fraud or misrepresentation," when as defendant knew, he had previously sought a visa and entry into the United States by false statement and fraud, in that he submitted a DS-160, in which he falsely answered "No" to various questions; and (2) he falsely answered "No" to Question 40l of Part II of his DS-230, in which he denied being a member of a class of individuals excluded from entry into the United States by reason of being "An alien…who [had] ever engaged in the recruitment of or the use of child soldiers," when as the defendant knew, he had engaged in the recruitment of or the use of child soldiers.

In violation of Title 18, United States Code, Section 1546(a).

12

## COUNT FOUR

### THE GRAND JURY FURTHER CHARGES THAT:

1.        Paragraphs 1 through 17 and paragraph 24 of Count One of this Superseding Indictment are incorporated here.

2.        On or about March 26, 2022, in the Eastern District of New York, defendant

**LAYE SEKOU CAMARA,**
**a/k/a "K-1,"**
**a/k/a "Dragon Master,"**

knowingly possessed a document prescribed by statute or regulation for entry into or evidence of authorized stay in the United States, knowing it to have been procured by false statement or to have otherwise been procured by fraud; that is, defendant CAMARA knowingly possessed as evidence of lawful authorized stay in the United States, his Green Card, which card he received as a result of the approval of his DS-230, in which he made false statements with respect to a material facts, that is: 1) he falsely answered "No" to Question 40f of Part II of his DS-230, in which he denied being a member of a class of individuals excluded from entry into the United States by reason of seeking "or [having] sought a visa, entry into the United States, or any immigration benefit by fraud or misrepresentation," when as defendant knew, he had previously sought a visa and entry into the United States by false statement and fraud, in that he submitted a DS-160, in which he falsely answered "No" to various questions; and (2) he falsely answered "No" to Question 40l of Part II of his DS-230, in which he denied being a member of a class of individuals excluded from entry into the United States by reason of being "An alien…who [had] ever engaged in the recruitment of or the use of child soldiers," when as the defendant knew, he had engaged in the recruitment of or the use of child soldiers.

13

14

In violation of Title 18, United States Code, Section 1546(a).

**A TRUE BILL:**

_____

**JACQUELINE C. ROMERO**
**United States Attorney**

No._ _ _ _ _ _ _ _ _

**UNITED STATES DISTRICT COURT**

Eastern District of Pennsylvania

<u>Criminal Division</u>

THE UNITED STATES OF AMERICA

vs.

LAYE SEKOU CAMARA,
a/k/a "K-1,"
a/k/a "Dragon Master"

SUPERSEDING INDICTMENT

Counts
18 U.S.C. § 1546(a) (use of a fraudulently obtained immigration document - 3 counts), 18 U.S.C. §
1546(a) (possession of a fraudulently obtained immigration document - 1 count)

A true bill

Filed in open court this _____ **25th** _____ day,
Of ___**January**___ A.D. 20__ **23**___

Clerk

Bail, $_____