IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 22-142 |
| LAYE SEKOU CAMARA<br>a/k/a "K-1"<br>a/k/a "Dragon Master" | :<br><br>: | |

**GOVERNMENT'S MOTION FOR UPWARD DEPARTURE AND VARIANCE**

**I.     Introduction**

The United States of America, by its attorneys Jacqueline C. Romero, United States Attorney for the Eastern District of Pennsylvania; Linwood C. Wright Jr., Kelly Harrell, and Patrick Brown, Assistant United States Attorneys; and Chelsea Schinnour, Trial Attorney, United States Department of Justice; respectfully represents as follows:

On January 16, 2025, the defendant Laye Sekou Camara entered his guilty plea to Counts One, Two, Three, and Four of the Superseding Indictment, charging him with possession and use of a fraudulently procured Permanent Resident Card ("green card").   Sentencing hearings are scheduled for May 19 and May 29, 2025 before the Honorable Chad F. Kenney.   For the reasons discussed in this memorandum, the government moves for an upward departure and variance.[1]

---

[1] The government will file a sentencing memorandum which fully sets forth its position on sentencing in consideration of the Defendant's arguments and the U.S. Probation Department's Pre-Sentence Report (PSR), including the Defendant's guidelines calculation and criminal history category.

## II.     **Facts of the Case**

The Court is familiar with the facts of this case, which were set out in the government's December 12, 2024 Trial Memorandum (Dkt. 87) and will be set out in further detail in the government's forthcoming sentencing memorandum.   In brief, the defendant committed horrific atrocities as a general in the rebel group Liberians United for Reconciliation and Democracy (LURD) during Liberia's second civil war, which ran from 1999-2003.   On January 23, 2025, the Court saw documentary evidence and heard testimony from nine Liberian witnesses with firsthand knowledge of the defendant's conduct during that conflict.   They told a consistent story: under the *noms de guerre* "Dragon Master" and "K1," the defendant recruited and used child soldiers, abducted numerous individuals, commanded the rebels that fired mortars into a United States Embassy compound filled with refugees, and personally killed or mutilated scores of innocent civilians in the summer of 2003.

After the war, the defendant hid his past and repeatedly lied to gain entry into the United States.   In 2011 and 2012, the defendant submitted a U.S. Department of State DS-160 form to obtain temporary non-immigrant visa(s).   Those forms were riddled with falsehoods: the defendant represented that he had never been involved with a rebel group and had never participated in extrajudicial killings or other acts of violence.   In 2012, the defendant obtained a green card by submitting a U.S. Department of State DS-230 form.   Again, under penalty of perjury, the defendant hid his past: he told the U.S. government that, during the entirety of the Second Liberian Civil War, he had lived in Guinea working as a self-employed merchant.   He denied previously seeking entry into the United States by fraud or misrepresentation, denied committing extrajudicial killings, and said he had never engaged in the recruitment or use of

child soldiers. Based on these lies, he was admitted to the United States and granted permanent residency. He then used his fraudulently obtained green card to obtain a home health aide license with the New Jersey Board of Nursing, gain employment as a home health aide, and to get a Pennsylvania identification card. On March 26, 2022, the defendant was arrested at JFK International Airport in possession of his fraudulently obtained green card, as well as cell phones containing communications referencing his war monikers: "K-1" and "Dragon Master."

### III.  Argument

In fashioning a sentence, the Court conducts a three-step process: (1) it calculates the guideline range; (2) it considers departure motions; and (3) it considers the factors in 18 U.S.C. § 3553(a). *United States v. Stevenson*, 832 F.3d 412, 431 (3d Cir. 2016). Because of the extreme severity of the defendant's past conduct, enhancements are appropriate at step one, departures are appropriate at step two, and a variance is appropriate at step three.

**A. In Calculating the Guideline Range, U.S.S.G. § 2L2.2(b)(4)(B) Requires the Court to Consider the Defendant's Conduct Which He Sought to Conceal Through Immigration Fraud.**

The operative guideline in this case is U.S.S.G. § 2L2.2, involving fraudulently acquired documents relating to legal resident status. That guideline provides for a base offense level of 8. U.S.S.G. § 2L2.2(a). However, § 2L2.2(b)(4)(B)[2] provides:

> If the defendant committed any part of the instant offense to conceal the defendant's participation in (i) the offense of incitement to genocide, increase by 6 levels; or (ii) any other serious human rights

---

[2] Section 2L2.2(b)(4) became effective in 2012, and applies to the offenses of conviction—use and possession of fraudulently-procured green cards—because those offenses occurred in 2017 (Count One), 2020 (Counts Two and Three), and 2022 (Count Four). The fact that the defendant made misrepresentations in immigration forms prior to 2012 does not alter the fact that § 2L2.2(b)(4) is the operative guideline here: "the last date of the offense of conviction is the controlling date for *ex post facto* purposes." U.S.S.G. § 1B1.11 n.2.

3

>offense, increase by 10 levels. If clause (ii) applies and the resulting offense level is less than level 25, increase to level 25.

Application Note 4 defines "serious human rights offense," as violations of a number of federal offenses, in relevant part, by cross-referencing statutes relating to the use of child soldiers (18 U.S.C. § 2442) and war crimes (18 U.S.C. § 2441), along with "conduct that would have been a violation of any such law if the offense had occurred within the jurisdiction of the United States."

>The child soldier statute, 18 U.S.C. § 2442, defines the offense as follows:
>
>>(a) Offense. –Whoever knowingly–
>>(1) recruits, enlists, or conscripts a person to serve while such person is under 15 years of age in an armed force or group; or
>>(2) uses a person under 15 years of age to participate actively in hostilities; knowing such person is under 15 years of age, shall be punished as provided in subsection (b).

The statute includes the following definitions:

>(d) Definitions. –In this section:
>(1) Participate actively in hostilities. The term "participate actively in hostilities" means taking part in–
>(A) combat or military activities related to combat, including sabotage and serving as a decoy, a courier, or at a military checkpoint; or
>(B) direct support functions related to combat, including transporting supplies or providing other services.
>(2) Armed force or group. –The term "armed force or group" means any army, militia, or other military organization, whether or not it is state-sponsored, excluding any group assembled solely for nonviolent political association.

The defendant plainly qualifies for the child soldiers enhancement. LURD was an "armed force or group" under 18 U.S.C. § 2442(d)(2), and witness testimony established that the defendant both "recruit[ed]" and "use[d]" child soldiers within the meaning of 18 U.S.C. § 2442(a)(1) and (2). All four counts of the Superseding Indictment explicitly charge the

4

defendant with knowingly engaging in the recruitment or use of child soldiers, and the defendant admitted to recruiting and using child soldiers when he pleaded guilty. During his guilty plea colloquy on January 16, 2025, the defendant requested that the Superseding Indictment be used as the factual basis for his guilty plea. He asked that the Superseding Indictment be read word-for-word, in its entirety, and only pleaded guilty after the phrase, "as the defendant knew, he had engaged in the recruitment of or the use of child soldiers" was repeated, out loud, four times. The defendant's own admission, combined with corroborating documentary evidence and testimony which will be detailed at length in the government's forthcoming sentencing memorandum, establish that the defendant "committed any part of the instant offense to conceal the defendant's participation in . . . [the] serious human rights offense" of using or recruiting child soldiers. Accordingly, there is ample basis for the Court to apply an offense level of 25 under § 2L2.2(b)(4)(B).[3]

The Guidelines also require the court to consider whether the defendant committed a "war crime" under 18 U.S.C. § 2441(c)(3), (d) (defining "war crime"). Department of Justice policy requires prior, express approval of the Assistant Attorney General of the Criminal Division prior to advocating for the application of the § 2L2.2(b)(4)(B) enhancement on the basis of war crimes. Before filing its sentencing memorandum, the government will ascertain whether war crimes constitute an additional basis for the application of § 2L2.2(b)(4) based on the facts in this case.

---

[3] To the extent that the Court declines to apply the enhancement under U.S.S.G. § 2L2.2(b)(4)(B), the government respectfully asks in the alternative that the Court consider the seriousness of the conduct the defendant sought to conceal through an upward departure under U.S.S.G. § 5K2.21. That provision allows the Court to consider "conduct . . . that did not enter into the determination of the applicable guideline range."

In short, while the defendant is charged with immigration violations under 18 U.S.C. § 1546, U.S.S.G. § 2L2.2(b)(4)(B) requires the Court to consider whether the defendant "committed any part of the instant offense to conceal the defendant's participation in" (a) the recruitment or use of child soldiers, or (b) war crimes.  For the reasons above, that provision applies here.  And for the reasons below, even the enhanced base offense level of 25 is inadequate in this case.

### B. Upward Departures under U.S.S.G. §§ 5K2.0 and 5K2.21 Are Appropriate Given the Defendant's Heinous Conduct.

The Superseding Indictment charges the defendant with four counts of using or possessing a green card procured by fraud.  As the Court has repeatedly pointed out, this is a prosecution for an immigration violation: the defendant lied in immigration forms to cover up his past.  But as both the Guidelines themselves and caselaw make clear, the defendant's sentence should reflect what, precisely, the defendant was trying "to conceal" by committing immigration fraud.  As the Sentencing Commission explained in promulgating the amendment establishing U.S.S.G. § 2L2.2(b)(4)(B):

> The new enhancement reflects the impact that such immigration fraud offenses can have on the ability of immigration and naturalization authorities to make fully informed decisions regarding the defendant's immigration petition, application or other request and is intended to ensure that the United States is not a safe haven for those who have committed serious human rights offenses.

United States Sentencing Commission Guidelines Manual, Supp. to Appendix C, at 15 (Nov. 1, 2012-Nov. 1, 2013); *see also United States v. Jabateh*, 974 F.3d 281, 304 (3d Cir. 2020) (affirming consecutive statutory maximum sentences for a brutal Liberian rebel commander because his immigration fraud "stood . . . the asylum system itself [] on its head" and

6

"undermine[d] the foundations of our immigration and asylum system").

As described above, the defendant qualifies for an enhancement under U.S.S.G. § 2L2.2(b)(4)(B). But even that enhancement is wholly inadequate to account for the scale and depravity of the defendant's actions, which both exceed the conduct contemplated by that enhancement and fall outside its scope. Accordingly, a departure is appropriate under U.S.S.G. § 5K2.0 (because the severity of the defendant's conduct far exceeds even the conduct contemplated by U.S.S.G. § 2L2.2(b)(4)(B)) and U.S.S.G. § 5K2.21 (because much of the defendant's conduct falls outside the precisely defined statutory bases for an enhancement under U.S.S.G. § 2L2.2(b)(4)(B)).[4]

### 1. A Departure under U.S.S.G. § 5K2.0 Is Appropriate Because the Defendant's Conduct Falls Well Outside the Heartland of U.S.S.G. § 2L2.2.

Where a case falls outside the heartland of the applicable guideline, the court may depart. *See United States v. Stuart*, 22 F.3d 76, 82-83 (3d Cir. 1994). The heartland of a given guideline are the "typical cases [that] embody[]" the conduct that the guideline describes. *United States v. Ali*, 508 F.3d 136, 147 (3d Cir. 2007) (quoting U.S.S.G. § 1A1.1 cmt. 4(b)). Here, the "heartland" of U.S.S.G. § 2L2.2 with the enhancement under (b)(4)(B) includes cases in which a defendant committed immigration fraud to conceal, e.g., any single war crime. *See, e.g.*, *United States v. Vidic*, No. 23-cr-17, dkt. 45 (N.D. Ohio 2024) (applying the U.S.S.G. § 2L2.2(b)(4)(B) enhancement without departure to an immigration fraud defendant—a Serb soldier who had killed one non-combatant). However, this case falls well outside of that heartland even with the

---

[4] The government will provide a more detailed description of the exact magnitude of the departure it seeks in its forthcoming sentencing memorandum, which will incorporate the findings of the forthcoming presentence report.

enhancement: the defendant's immigration fraud was designed to hide that he forcibly recruited children to fight with him; beat and mutilated those who defied him; repeatedly massacred civilians; forbade the burial of at least one victim's body in contravention of Islamic customs; and imperiled the operation of the U.S. Embassy in Liberia and the lives of its staff when troops under his command fired explosives at the embassy.

Because of this egregious conduct, the government moves for an upward departure under U.S.S.G. § 5K2.0. It is also worth noting that, although §§ 5K2.1 through 5K2.8 do not directly apply to the offense of conviction (use or possession of a fraudulently obtained green card), the defendant's immigration offense was committed to conceal his actions in Liberia which meet every single one of the grounds for upward departures recognized by the U.S.S.G., that is, the defendant (1) caused deaths; (2) caused physical injuries; (3) caused extreme psychological injuries; (4) abducted and restrained victims; (5) damaged property (e.g., the U.S. Embassy in Liberia); (6) employed weapons and explosives; (7) disrupted government functions (e.g., the operation of the U.S. Embassy in Liberia); and (8) repeatedly displayed conduct that was "unusually heinous, cruel, brutal, or degrading to the victim." Under these circumstances, the Court's authority to depart upward under U.S.S.G. § 5K2.0 is well established. *See Jabateh*, 974 F.3d at 304.

In *Jabateh*, the defendant challenged the sentencing court's significant upward departure for charges pertaining to the falsification of immigration documents and perjury. *See* 974 F.3d at 303-04. The Third Circuit affirmed the sentencing court's upward departure, holding that it was not plain error to depart based on the defendant's "serious human rights offenses" in Liberia which gave rise to the charged offenses. *Id.* at 304. Critical to the court's decision was the

severity of the defendant's lies, and the disruption caused to the immigration and asylum system. *See id.* Ultimately, the Third Circuit approved the sentencing court's 26-level departure from a base guideline range of 15-21 months' imprisonment, resulting in defendant's 30-year sentence. *See id.* at 303–04. Other circuits have also upheld the imposition of statutory-maximum sentences and upward departures in similar contexts. In *United States v. Munyenyezi*, the First Circuit affirmed the sentencing court's upward departure under § 5K2.0 to the statutory maximum following findings that the defendant committed immigration fraud to hide his involvement in the Rwandan genocide. *See* 781 F.3d 532, 542-44 (1st Cir. 2015). In affirming a sentence at the statutory maximum, the First Circuit explained that the sentencing court was permitted to consider the facts that made the defendant's statements lies, implicating defendant's history of human rights offenses. *Id.* The Eleventh Circuit has reached the same conclusion. *See United States v. Jordan*, 432 F. App'x 950, 952 (11th Cir. 2011) (affirming departure under § 5K2.0 to statutory maximum because "it is difficult to imagine any more serious basis for immigration fraud than an individual's concealment of his prior participation in a mass murder of innocent civilians") (quotation omitted).

### 2. A Departure under U.S.S.G. § 5K2.21 Is Also Appropriate for Uncharged Conduct Not Considered in the Guideline Range.

U.S.S.G. § 5K2.21 provides:

> The court may depart upward to reflect the actual seriousness of the offense based on conduct (1) underlying a charge dismissed as part of a plea agreement in the case, or underlying a potential charge not pursued in the case as part of a plea agreement or for any other reason; and (2) that did not enter into the determination of the applicable guideline range.

As described in the previous section, it is well-established that U.S.S.G. § 5K2.0 allows this

9

Court to consider the underlying conduct the defendant attempted to conceal through his immigration fraud and depart on that basis.   However, the Court may also consider additional information reflecting "the actual seriousness of the offense" based on additional conduct under U.S.S.G. § 5K2.21.

One such consideration—which is also permissible under U.S.S.G. § 5K2.0—is that the defendant's victims included American targets.   *U.S. Embassy in Liberia Hit by Mortar Fire; Deaths Reported*, FOX NEWS (July 22, 2003, 4:37 a.m.) https://www.foxnews.com/story/u-s-embassy-in-liberia-hit-by-mortar-fire-deaths-reported ("'We're concerned about our people,' President Bush told a press conference in Crawford, Texas.   'We are strongly condemning the rebel group . . . for their continued reckless and indiscriminate shelling of Monrovia,' said State Department spokesman Philip T. Reeker.").   At the sentencing hearing on January 23, 2025, witness Zubin Cooper reviewed video of a LURD rebel firing mortar shells toward Monrovia, identified that soldier by name, and testified to his firsthand knowledge that the mortar attacks on the U.S. Embassy in Liberia were committed by that soldier, who was under the defendant's direct command.   Cooper further testified that those mortar attacks resulted in the deaths of over a dozen civilians seeking refuge at the embassy's compound and identified a photograph of their bodies outside the embassy.   *See also* Somini Sengupta, *Enraged Liberians Call for US Help As Rebels Attack*, N.Y. TIMES (July 21, 2003) https://www.nytimes.com/2003/07/21/international/africa/enraged-liberians-call-for-us-help-as-rebels-attack.html ("At least 25 people were killed when mortar rounds fell into the Grey-stone compound [part of the Embassy], a storage yard that now houses more than 20,000 Liberians seeking shelter from the latest assaults.").   These mortar attacks resulted in the deaths of

multiple foreign nationals, killed U.S. Embassy personnel, and severely affected the operations of the U.S. Embassy itself, to the point that the Embassy was almost evacuated.  *See* Dante Paradiso, THE EMBASSY, page 107 (2016) ("[A]n embassy gardener and one of the Inter-Con contract guards had been killed by shrapnel . . . This was [Ambassador] John Blaney's embassy. These were his people.  They did jobs that supported an American diplomacy and that aimed for a better future for their own country.  Now they were dead . . .Viability of the mission was at stake.").

Based on these facts, in considering the degree of upward departure, the Court may look to U.S.S.G. § 2M6.1(a)(2) for guidance.  That guideline provides a base offense level of 28 for "unlawful activity involving . . . other weapons of mass destruction."[5]  Subsection (b)(2) provides for an additional four-level enhancement if "any victim died," and (b)(3) provides for an additional four-level enhancement if the offense "resulted in (i) substantial disruption of public, governmental, or business functions or services; or (ii) a substantial expenditure of funds to clean up, decontaminate, or otherwise respond to the offense."  Subsection (c)(1) further cross-references the murder guidelines at U.S.S.G. §§ 2A1.1 and 2A1.2.  While the government does not contend that the defendant's guidelines should be calculated under § 2M6.1, those guidelines are important guideposts for the Court in fashioning a departure and considering the defendant's culpability and offense level.  The defendant's immigration fraud concealed his

---

[5] The mortar rounds used in these attacks were "weapons of mass destruction" within the meaning of § 2M6.1.  Application Note 1 provides a cross-referenced definition of that term in 18 U.S.C. § 2332a(c)(2)(B), (C), and (D); that statute in turn references in part the definition of "destructive device" in 18 U.S.C. § 921; and § 921(a)(4) contains numerous definitions of "destructive device" which clearly cover mortars.  *See, e.g.*, *Pruess v. United States*, No. 5:06CV159-V-02, 2011 WL 3444098, at *4 (W.D.N.C. Aug. 8, 2011) (holding that even a mortar round, by itself, "is a 'destructive device,' *per se*").

11

prior involvement in launching deadly explosives at American property and personnel abroad, and just this conduct, by itself, would justify a substantial upward departure.  Even apart from the atrocities that the defendant personally visited on Liberian civilians, the indiscriminate mortar fire by his troops was so destructive and threatening to American national interests that the matter was explicitly condemned by the U.S. Department of State and escalated to the President of the United States.

### 3. A Departure Is Warranted Because the Defendant's Criminal History Category Under-Represents His Past Conduct.

An upward departure may be appropriate if "reliable information indicates that the defendant's criminal history category substantially under-represents the seriousness of the defendant's criminal history." U.S.S.G. § 4A1.3.  In deciding whether such a departure is warranted, the district court may consider multiple factors, including "[p]rior sentence(s) not used in computing the criminal history category," U.S.S.G. § 4A1.3(a)(2)(A), and "[p]rior similar adult criminal conduct not resulting in a criminal conviction," U.S.S.G. § 4A1.3(a)(2)(E).

However, in determining whether it should grant an upward departure under § 4A1.3, the district court is not strictly limited to the list of factors under § 4A1.3(a)(2).  Rather, as the Third Circuit has opined, "[w]e cannot stress enough that § 4A1.3 was designed to 'provide flexibility in those cases where a point-by-point calculation of the defendant's criminal history category is not alone sufficient to reflect his culpability and dangerousness.'" *United States v. Perry,* 460 F. App'x 149, 154 (3d Cir. 2012) (citing *United States v. Harris,* 44 F.3d 1206, 1214 (3d Cir. 1995)).

Under § 4A1.3, the defendant's prior uncharged criminal conduct was both the conduct

12

he sought to conceal, and also provides critical evidence of the defendant's dangerousness. The Court, upon considering the Government's evidence that the defendant's criminal history is underrepresented, may elect to depart to a "criminal history category applicable to defendants whose criminal history or likelihood to recidivate most closely resembles that of the defendant's." *United States v. Barnes,* 430 F. Supp. 3d 9, 14 (W.D. Pa. 2019).

### C. An Upward Variance is Appropriate.

Sentencing courts are not required to impose a sentence within the applicable guideline range where aggravating circumstances are not adequately considered by the Sentencing Commission in composing the U.S. Sentencing Commission Guidelines Manual ("Sentencing Guidelines"). 18 U.S.C.A. § 3553(b). The Sentencing Guidelines are advisory. *See United States v. Booker*, 543 U.S. 220, 258–65 (2005). A sentencing court is free to impose a sentence outside the applicable guideline range for a given offense by departing from the range. *See Chavez-Meza v. United States*, 585 U.S. 109, 111-12 (2018).  The Court "has almost unlimited discretion in determining the appropriate sentence in a criminal case."  *United States v. Simmonds*, 235 F.3d 826, 837-38 (3d Cir.2000). Indeed, "[n]o limitation shall be placed on the information concerning the background, character, and conduct of the person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.

In cases like this—where a criminal defendant committed immigration fraud to cover up human rights violations abroad—variances well above the guidelines are appropriate. *See, e.g.*, *United States v. Sosa*, 608 Fed. App'x. 464, 468 (9th Cir. 2015) (affirming ten-year sentence for naturalization fraud where defendant lied about committing human rights abuses in Guatemala).

13

The Tenth Circuit, for example, has affirmed a substantial variance and a 22-year sentence in a case of immigration fraud in which the defendant concealed an extensive history of human rights violations in Ethiopia. *See United States v. Worku*, 800 F.3d 1195, 1207 (10th Cir. 2015). In affirming that sentence, the *Worku* court approvingly quoted the District Court's rationale for the variance: "Congress has provided maximum sentences for the most egregious violations of these statutes. If this case is not egregious, I cannot imagine what case would be." *Id*. at 1208.

## IV.    Conclusion

The defendant obtained a green card by repeatedly lying about his past: he recruited and used child soldiers, killed and maimed scores of civilian non-combatants, and oversaw an attack on a United States embassy. It is well-established that this Court may consider what the defendant was trying to conceal in fashioning an immigration fraud sentence, and for the reasons above, the government respectfully submits that both an upward departure and an upward variance are appropriate in this exceptional case.

Respectfully submitted,

Jacqueline C. Romero
United States Attorney

/s/*Linwood C. Wright, Jr.*
LINWOOD C. WRIGHT, JR.
KELLY HARRELL
PATRICK BROWN
Assistant United States Attorneys

CHELSEA SCHINNOUR
Trial Attorney
U.S. Department of Justice
Human Rights and Special Prosecutions Section

Dated: February 7, 2025

14

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Sentencing Memo was served upon the following:

>Richard Fuschino, Jr., Esq.
>Pantellis Palividas, Esq.
>Counsel for Laye Sekou Camara

>/s/   *Patrick Brown*
>PATRICK BROWN
>Assistant United States Attorney